UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MOISES VELAZQUEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-1563 |
| | § | |
| FPS LP; dba OFFICE FURNITURE | § | |
| CONNECTION, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced FLSA action are Defendants' Motions for Extension of Time to File Responses to Plaintiffs' Motion for Conditional Certification and for Leave for Ex Parte Communications with Plaintiffs (Docs. 22 and 23). Upon review and consideration of the motions, Plaintiff's Response (Doc. 25), and the Replies thereto (Docs. 26 and 27), the Court concludes that the motions are denied.

## I.    Background

Plaintiffs are sixteen manual labors who have filed suit against their employer to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq*. Each employee submitted a written consent to join the action as required by 29 U.S.C. 216(b). (Notices of Consent, Doc. 1-1–1-14; Doc. 5, Doc. 12). Thereafter, fourteen Plaintiffs signed and submitted identical notices of withdrawal to Plaintiffs' counsel stating: "I have changed my mind and want my name removed from all paperwork in your office." (Withdrawal Letters and Envelopes, Doc. 21-10). Upon receipt of Plaintiffs' withdrawal letters, Plaintiffs' counsel filed a Charge with the National Labor Relations Board (NLRB) (Charge No. 16-CA-107685) alleging that Defendants unlawfully interfered with Plaintiffs' exercise of their right to file the instant

collective action pursuant to Section 7 of the National Labor Relations Act by disciplining and threatening them.  (NLRB Charge No. 846-2012-67405, Doc. 21-12).  After an investigation, the Defendants reached a settlement agreement with the NLRB which required Defendants to post for 60 days the NLRB's "Notice to Employees," which essentially states that employees have a right to act collectively for their benefit without fear of retaliation.  (Settlement Agreement, Doc. 21-13).

Since the settlement, at least two Plaintiffs have publically repudiated their withdrawal letters.  *See* Declarations of Lara and Artega (Docs. 21-4 and 21-6).  Plaintiffs Lara and Artega filed declarations with the Court describing the retaliation they endured.  (*Id.*)  They stated that within days of filing their consent forms, Defendants met with each of the workers who submitted a form and threatened them with reduction in work hours and termination.  (*Id.* ¶¶ 7–9).  Lara stated that he was forced to sign the withdrawal because Defendants' took Wednesday from his work schedule, hired day laborers to fill his position on that day, and also threatened him with termination.  (Doc. 21-4 ¶ 12).  Artega stated that he was also threatened with termination if he did not withdraw.  (Doc. 21-6 ¶ 9).  Both wish to rejoin the suit.  (Doc. 21-4 ¶ 22; Doc. 21-6 ¶ 10).

Plaintiffs have now filed a motion for conditional certification of the class, invalidation of the withdrawal letters, and curative notice to potential plaintiffs, including those who may have submitted withdrawal letters.  (Pl.'s Mot. for Conditional Cert, Doc. 21).  Defendants move for additional time to respond to Plaintiffs' motion and for leave to communicate with the withdrawn plaintiffs "outside the presence of opposing counsel."  (Docs. 22 and 23).  Defendants seek to communicate with the withdrawn plaintiffs "so as to ascertain their position regarding their withdrawal from the matter and to formulate a response to Plaintiff's Motion."  (*Id.* ¶ 11).

Plaintiffs filed a response to Defendants' motions arguing that Defendants should not be allowed to communicate with withdrawn Plaintiffs *ex parte* because such communications are unlawful under the NLRA and the Texas Rules of Professional Conduct since Plaintiffs are represented by counsel.  (Doc. 25 at 1).  They state that the identical withdrawal letters which were all written in English and sent from Defendants' office supports their allegations of coercion and evidence the need to protect Plaintiffs from further interrogation by Defendants. (*Id.* at 4).  In addition, Plaintiffs aver that it is not necessary for Defendants to communicate with Plaintiffs in order to respond to a motion for conditional certification, as such motions are typically "based only on the pleadings and any affidavits which have been submitted."  *Mooney v. Armaco Serv. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  Plaintiffs insist that Defendants can formulate a proper response to the motion for conditional certification by consulting with officers and managers.  (*Id.* at 4).

Defendants filed replies to Plaintiffs' response in which they deny ever threatening any Plaintiffs.  (Docs. 26 and 27 ¶ 7).   They dismiss the argument that the uniformity of the withdrawal letters is evidence of coercion by stating that it would be "natural" for Plaintiffs to communicate their withdrawal to Plaintiffs' counsel in English, and the same envelopes and labels were utilized simply because "they are available to Plaintiffs as they are located at Plaintiffs' place of employment."  (*Id.* ¶ 14).  Defendants ask to communicate with Plaintiffs solely to "ascertain their desire to participate in this suit so as to properly evaluate how to proceed in this matter" and "to discover if they were coerced…by Co-Plaintiffs and Plaintiffs' counsel as multiple Plaintiffs have stated independently to [] Defendants."  (*Id.* ¶ 14).  They contend that communication with Plaintiffs, particularly withdrawn Plaintiffs, does not constitute

a violation of the NLRA because "it is not unlawful per se for an employer to interrogate an employee if the employer has a legitimate cause and the questioning is directed toward the investigation of facts and is necessary in preparing the employer's defense for trial."  (*Id.* ¶ 11–12) (citing *NLRB v. Johnnie's Poultry Co.*, 146 NLRB 770, 77–75 (1964), *enforcement denied on other grounds, United States v. Motorlease Corp.*, 334 F.2d 617, 619 (8th Cir. 1964). Defendants further contend that the withdrawn Plaintiffs are no longer represented by counsel, and those who expressed a desire to retain counsel will not be questioned.  (*Id.*  ¶ 17–19).  Lastly, Defendants argue that Rule 408 of the Federal Rules of Evidence prohibits Plaintiffs from using the fact of a formal settlement with the NLRB against them in this proceeding.  (*Id.* ¶ 10).

## II.    Legal Standard

Section 216(b) of the FLSA expressly authorizes employees to bring a collective action "on behalf of…themselves and other employees similarly situated."  29 U.S.C. ¶ 216(b).  An FLSA collective action functions similarly to a class action brought under FED. R. CIV. P. 23.  A "critical difference," however, between a section 216(b) collective action and Rule 23 class action "is that the former requires each class member to opt in as a party plaintiff, but the latter includes all absent members who do not affirmatively opt out."  *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 933 n.6 (5th Cir. 2005).

Noting the potential for abuse in this process, the Supreme Court stated that federal courts have authority under 216(b) "to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989).  Courts have "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the

parties." *Id.* (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). This responsibility commences once the collective action is filed—before the court conditionally certifies the class or authorizes notice pursuant to section 216(b). *Id.* at 170–71.

A court may exercise this authority to restrict pre-certification communications with absent class members based "on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003) (citing *Gulf Oil Co.*, 452 U.S. at 100). "Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine [the collective action]." *Id.* (citations omitted). Evidence of coercive behavior by a party opposing a class provides a district court with "ample discretion" to regulate communications with class members related to the notice process. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201–03 (11th Cir. 1985). Where a court concludes that a need to limit communications exists, it may issue "a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances…, the policies of section 216(b) and the Federal Rules of Civil Procedure." *Vogt v. Tex. Instruments Inc.*, Civ. A. No. 3:05-CV-2244-L, 2006 WL 4660133, at *3 (N.D. Tex. Aug. 8, 2006) (citing *Gulf Oil Co.*, 452 U.S. at 102).

## III.   Discussion

Here, the evidence in the record clearly shows that there is a need to limit Defendants' communications with Plaintiffs, including those who have withdrawn from the case. The declarations in the record regarding the threats of reduction in work schedules and termination, combined with the high rate of attrition (almost 90%) of class plaintiffs, and the uniformity of the withdrawal letters all support the conclusion that Defendants coerced Plaintiffs to withdraw

in an attempt to undermine the collective action.  *See Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 757 (9th Cir. 2010), *vacated on other grounds* 132 S. Ct. 74, 181 L.Ed. 1 (2011) (upholding district court's order to restrict defendant's ability to communicate with class members where the opt-out period was "rife with instances of coercive conduct, including threats to employees jobs, termination of an employee supporting the litigation, the posting of signs urging individuals not to tear the company apart, and the abnormally high rate of opt outs").  In addition, the ongoing business relationship between the parties makes unilateral communications from Defendants to potential class members particularly predisposed to coercion and misinformation.  *See Kleiner*, 751 F.2d at 1202 ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.  The damage from misstatements could well be irreparable.").  Furthermore, the opt-in nature of the FLSA collective action makes it especially vulnerable to such subversive efforts and heightens the need for judicial intervention.  Based on the evidence in the record, the Court finds that there is a strong need to restrict Defendants' speech with employees in this case.

Defendants' argument that evidence of the NLRA settlement is inadmissible under Evidence Rule 408 is unfounded as the evidence is not being used for either of the purposes prohibited by the rule—to "prove or disprove the validity or amount of a disputed claim or to impeach by prior inconsistent statement or a contradiction."  FED. R. EVID. 4.  Defendants' argument that they have a right to interrogate Plaintiffs under *Johnnie's Poultry* is likewise without merit.  *Johnnie's Poultry* declares that there only two legitimate purposes for which an employer may interrogate employees "on matters involving their Section 7 rights without incurring Section 8(a)(1) liability…[:] the verification of a union's claimed majority status to

determine whether recognition should be extended…and the investigation of facts concerning issues raised in a complaint where such interrogation is necessary in preparing the employee's defense for *trial* of the case." *Johnnie's Poultry Co.*, 146 NLRB 770, 774–75, 1964 WL 15910 (1964) (emphasis supplied). Defendants argues that they need to interrogate Plaintiffs in order to formulate a proper response to Plaintiffs' motion for conditional certification. Defendants, however, have cited no authority and the Court has found none which states that an employer has the right under *Johnnie's* to interrogate employees in order to prepare a defense to a motion for conditional certification of an FLSA collective action.

The Court finds in this case that it is necessary and appropriate to issue an order prohibiting Defendants' from discussing this litigation with any employee from the date of entry of this Order until the Court rules on Plaintiff's motion for conditional certification. This restriction does not impinge on Defendants' ability to communicate with Plaintiffs regarding business matters not related to this lawsuit and is not greater than necessary to achieve the objective of insulating the notice process from misleading information or coercion.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motions to Extend Time and Motions for Leave of Court to Communicate with Withdrawn Plaintiffs (Docs. 22 and 23) are **DENIED**. It is further

**ORDERED** that Defendants are prohibited from discussing this litigation with any employee from the date of entry of this Order until the Court rules on Plaintiffs' Motion for Conditional Certification. It is further

**ORDERED** that Defendants Respond to Plaintiffs' Motion for Conditional Certification (Doc. 21) within 10 days of this Order.

7 / 8

SIGNED at Houston, Texas, this 28th day of April, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE