UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MOISES VELAZQUEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-1563 |
| | § | |
| FPS LP; dba OFFICE FURNITURE | § | |
| CONNECTION, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Conditional Certification, Curative Notice and Invalidation of "Opt-Out" Forms, and Request for Leave to File Additional Declarations Under Seal (Doc. 21).  Defendants have filed responses (Docs. 29 and 30).  Upon review and consideration of the motion and the responses thereto, the relevant legal authority, and for the reasons stated below, the Court concludes that the motion should be granted.

## I.    Background

Plaintiffs filed this suit as a collective action under the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. § 201 *et seq.*, against Defendants, Furniture Procurement Services, L.P. d/b/a Office Furniture Connection ("FPS"), Vincent Oddo Interior Service Inc. ("VOIS"), and Vincent Oddo ("Oddo"), the owner of both OFC and VOIS, (collectively, the "FPS Defendants") and TLD Premier Services Inc. ("Premier") and its owner, Telmo Urrutia ("Urrutia"), (collectively, the "Premier Defendants"), (all together, "Defendants"), alleging failure to pay overtime wages.  OFC and its sister-company, VOIS, "sell, install, repair, refurbish and store office furniture."  Doc. 21 at 2.

Plaintiffs are sixteen current and former "service and installation technicians" who work in Defendants' warehouse in Houston, Texas. *Id.* As service and installation technicians, Plaintiffs perform repetitive manual labor such as cleaning, packaging, assembling, disassembling, and moving office furniture and cubicles. *Id.* at 2–3. Together, OFC and VOIS employ approximately 40 service and installation technicians. *Id.* Plaintiffs allege that they regularly worked between 50 and 60 hours per week and were paid at an hourly rate between $9 and $15, without overtime compensation. *Id.* at 3. They seek unpaid overtime wages owed, liquidated damages, prejudgment interest and attorneys' fees. *Id.* at 5–6.

Premier acts as the human resource department for the FPS Defendants by maintaining personnel files and managing payroll. *Id.*; Doc. 6 ¶ 18. Plaintiffs allege that Premier was created sometime in 2011 or 2012 in order to pass through wages from the FPS Defendants to Plaintiffs and that the FPS Defendants and the Premier Defendants are "joint employers" under the FLSA.[1] Doc. 6 ¶ 18; Doc. 21 at 2. In support of this assertion, Plaintiffs allege that the FPS Defendants and the Premier Defendants share "a warehouse, sales floor, and executive offices," and Defendant Urrutia acts as both the owner of Premier and the warehouse manager for FPS. Doc. 21 at 2. Also, according to Plaintiffs, Premier does not provide payroll service to any clients other than the FPS Defendants. *Id.* Plaintiffs allege that before Premier assumed management over the FPS Defendants' payroll services, Plaintiffs received time-and-a-half for hours worked in excess of 80 in a two-week period; and since Premier was created Plaintiffs receive "straight time" for all hours worked. *Id.* at 4.

Concurrently with the complaint or shortly thereafter, each named Plaintiff filed a written consent to join this action as required by 29 U.S.C. § 216(b). Notices of Consent, Docs. 1-1–1-

---

[1] 29 C.F.R. § 791.2 ("all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act").

14; 5; 12.  Within a few weeks of filing the consent notices, fourteen of the sixteen Plaintiffs signed and submitted identical withdrawal letters to Plaintiffs' counsel stating: "I have changed my mind and want my name removed from all paperwork in your office."  Withdrawal Letters and Envelopes, Doc. 21-10.  These letters were collected and sent via FedEx or certified mail. *Id.*  Upon receipt of Plaintiffs' withdrawal letters, Plaintiffs' counsel filed a Charge with the National Labor Relations Board ("NLRB") (Charge No. 16-CA-107685) alleging that Defendants unlawfully interfered with Plaintiffs' exercise of their right to file the instant collective action pursuant to Section 7 of the National Labor Relations Act by disciplining and threatening them.  NLRB Charge No. 846-2012-67405, Doc. 21-12.  After an investigation, Defendants reached a settlement agreement with the NLRB which required them to post for 60 days the NLRB's "Notice to Employees," which states in essence that employees have a right to act collectively for their benefit without fear of retaliation.  Settlement Agreement, Doc. 21-13.

Plaintiffs now move to conditionally certify a class of all service and installation technicians employed by Defendants who were denied overtime in any workweek since January 10, 2011.  Doc. 21 at 14.  Plaintiffs also request that the Court invalidate the withdrawal letters and issue curative notice to all potential plaintiffs, including those who submitted withdrawal letters.  *Id.* at 16–18.  In support of their motion, Plaintiffs attach four declarations detailing Defendants' acts of retaliation against them.  *See* Decl. of Esparza, Doc. 21-3; Decl. of Lara, Doc. 21-4; Decl. of Davila, Doc. 21-5; Decl. of Arteaga, Doc. 21-6; *see also* Letter of Repudiation by Castillo, Doc. 21-11.  They assert that within days of filing the case, Defendants met with each of the workers who joined the suit and threatened them with reduction in work hours and termination.  *Id.*  Lara stated that he was forced to sign the withdrawal because Defendants took Wednesday from his work schedule, hired day laborers to fill his position on

that day, and also threatened him with termination.  Doc. 21-4 ¶ 12.  Castillo wrote that he was

threatened with reduced hours if he did not withdraw.  Doc. 21-11.  Artega stated that he was

threatened with termination.  Doc. 21-6 ¶ 9.  All three withdrew and now wish to rejoin the suit.

Doc. 21-4 ¶ 22; Doc. 21-6 ¶10; Doc. 21-11.  Plaintiffs Davila and Esparza resisted the

retaliation, or enticements in the case of Esparza, and did not withdraw.  *See* Docs. 21-3; 21-5.

Shortly after Plaintiffs filed their motion for conditional certification, Defendants filed

motions for extension of time to respond and for "leave to communicate with withdrawn

plaintiffs outside the presence of counsel."  Docs. 22 and 23.  Defendants claimed that they

sought to communicate with the withdrawn plaintiffs "so as to ascertain their position regarding

their withdrawal from the matter and to formulate a response to Plaintiff's Motion."  Docs. 22

and 23 ¶ 11.

In an Opinion and Order entered April 28, 2014 (Doc. 28), the Court denied Defendants'

motions for leave to communicate with withdrawn plaintiffs, stating:

> The declarations in the record regarding the threats of reduction in work schedules
> and termination, combined with the high rate of attrition (almost 90%) of class
> plaintiffs, and the uniformity of the withdrawal letters all support the conclusion
> that Defendants coerced Plaintiffs to withdraw in an attempt to undermine the
> collective action….Based on the evidence in the record, the Court finds that there
> is a strong need to restrict Defendants' speech with employees in this case.

Doc. 28 at 5–6.  The Court allowed Defendants ten days from the date of entry of the Order to

file responses to Plaintiffs' motion for conditional certification.  *Id.* at 6.

Defendants timely filed responses to Plaintiffs' motion in which they argue that (1)

conditional certification is not warranted; (2) in the event the Court decides that certification is

warranted, notice need not issue as every potential plaintiff is already aware of the suit; (3) in the

event the Court decides that notice should issue, the Court should not approve Plaintiffs'

proposed notice; (4) the Court should not invalidate the opt-out forms because they were not

coerced; and (5) the Court should not allow Plaintiffs to file any additional declarations under seal.  Docs. 29 and 30.  The Court considers each argument in turn.

## II.        Motion for Conditional Certification

Plaintiffs argue that conditional certification is appropriate in this case as all putative plaintiffs work in a single location under common management, perform similar manual-labor jobs related to installing, upholstering, assembling, and repairing office furniture, and are subject to a common policy of paying "straight time" for overtime.  Doc. 21 at 12.  Defendants contend that conditional certification is not warranted because different Plaintiffs were employed by different Defendants, each of whom has a different policy regarding overtime, and therefore each one of Plaintiffs' claims will necessitate an individualized inquiry.  Docs. 29 and 30 ¶ 11.

### A.        Legal Standard

Under the FLSA, nonexempt employees must earn a minimum wage of $7.25 per hour, and no employer shall employ any nonexempt employee in excess of 40 hours per week without compensation at one and one-half times the regular rate.  29 U.S.C. §§ 206(a), 207(a).  Section 216(b) of the FLSA permits an employee to bring an action "for and [on] behalf of himself . . . and other employees similarly situated."  *Id.* at § 216(b).  Collective actions serve the purpose of decreasing litigation costs by efficiently resolving common issues of law and fact in a single proceeding.  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  Putative class members must "opt-in," i.e., affirmatively notify the court of their intention to become parties to the collective action.  *Id.* § 216(b); *Mooney v. Armaco Srvcs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 91–92 (2003).  Conditional certification "is not tantamount to class certification under Rule 23."[2]

---

[2] The Fifth Circuit has discussed the fundamental differences between Federal Rule of Civil Procedure 23 class actions and the FLSA collective actions in *LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 288–89 (5th Cir.1975),

*Genesis Healthcare Corp. v. Symczyk,* ––– U.S. ––––, 133 S.Ct. 1523, 1532 (2013).  The only effect of a conditional certification is that a court-approved written notice may be sent to similarly situated ? putative class members, who then may choose to become parties to a collective action by filing a written notice of consent with the court.  *Id.* at 1530 (citing 29 U.S.C. § 216(b)).  Courts have discretion in determining whether to certify a collective action under the FLSA and to authorize notice to similarly situated employees advising them of their right to join such a collective action.  *Mooney*, 54 F.3d at 1213.

To certify a collective action under the FLSA, two requirements must be satisfied.  "First, the named representative and the putative members of the prospective FLSA class must be similarly situated.  Second, the pending action must have a general effect."  *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005).  Class treatment is not appropriate where the action arises from circumstances that are "purely personal to the plaintiff, and not from any generally applicable rule or policy."  *Id.*  The Fifth Circuit has noted the two different tests that courts apply to determine if the putative class members are "similarly situated."  *Mooney*, 54 F.3d at 1213–14.  Like most district courts, this Court has generally adopted the two-stage approach articulated in *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J. 1987), which consists of (i) a notice stage, followed by (ii) a decertification stage.[3]  *See Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 916 n.2 (5th Cir. 2008) (declaring that "collective actions typically proceed in two stages").  At the notice stage of the *Lusardi* approach, the district court first makes a preliminary determination of whether putative plaintiffs are similarly situated to the named plaintiffs.  *Mooney,* 54 F.3d at 1213–14.  If they are, then the court

and *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 916–18 (5th Cir. 2008).

[3] A second, less common approach is the "spurious" class action procedure employed in *Shushan v. Univ. of Colo.,* 132 F.R.D. 263 (D. Colo. 1990), which analyzes collective certification according to the Rule 23 class action requirements; i.e., numerosity, commonality, typicality and adequacy of representation.

conditionally certifies the action and authorizes notice to potential plaintiffs to opt in, and the suit "proceeds as a representative action throughout discovery." *Id.* at 1214. Generally, after the close of discovery, the defendant initiates the second stage by filing a motion for "decertification." *Id.* At this stage, the Court makes a factual determination from discovery evidence of whether the plaintiffs are actually "similarly situated." *Id.* If the court determines from discovery evidence that the plaintiffs are in fact similarly situated, then the case continues as a representative action. *Id.* If the court finds that the plaintiffs are not similarly situated, then the class is decertified, the "opt-in" plaintiffs are dismissed without prejudice, and the original plaintiffs proceed to trial on their individual claims. *Id.* at 1213–14.

At the notice stage of the *Lusardi* analysis, the plaintiffs bear the burden to establish that they are similarly situated to other employees in the proposed class. *England*, 370 F. Supp. 2d at 507. Courts determine whether the burden has been met using a "fairly lenient standard," requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Mooney,* 54 F.3d at 1214, n.8 (citing *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)); *see also England*, 370 F. Supp. 2d at 507–08 (Plaintiffs must offer support of "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]."). A court will customarily make a decision "based only on the pleadings and any affidavits which have been submitted." *Mooney*, 54 F.3d at 1213–14. Generally, to meet this burden, a plaintiff must show "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those

individuals want to opt in to the lawsuit." [4]  *Morales v. Thang Hung Corp.*, Civ. A. No. 4:08-CV-2795, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009) (citing *Maynor v. Dow Chem. Co.*, Civ. A. No. G-07-0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008)); *Aguirre v. SBC Commc'ns, Inc.*, Civ. A. No. H-05-3198, 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006) (same).  "[C]ourts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified . . .; whether affidavits of potential plaintiffs were submitted . . .; and whether evidence of a widespread discriminatory plan was submitted."  *England*, 370 F. Supp. 2d at 508 (quoting *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399 (E.D. Tex. 1999)).

### B.  Discussion

Utilizing the two-step process recognized in *Lusardi*, the Court finds that Plaintiffs have met their burden to show that they are similarly situated to other current and former employees in the proposed class.  The declarations in the record provide a reasonable basis for crediting the assertion aggrieved individuals exist.  In all four of the declarations, Plaintiffs allege that they were employed by Defendants to perform manual labor, they worked in excess of 40 hours per week, and they were subject to a common policy of denying overtime wages.  *See* Doc. 21-3 ¶ 6–7; Doc. 21-4 ¶ 2; Doc. 21-5 ¶ 2; Doc. 21-6 ¶ 5.  These allegations are corroborated by paystubs from three employees which show that they received straight time for overtime hours.  *See* Velazquez Paystubs, Doc. 21-7; Perez Paystubs, Doc. 21-8; Sanchez Paystubs, Doc. 21-9.  Plaintiffs' pleadings and declarations further establish that other aggrieved individuals exist and are similarly situated to the named Plaintiffs in relevant respects.  Approximately 40 other service and installation technicians employed by Defendants performed similar job duties in a

---

[4] Some courts have rejected this third non-statutory element.  *See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc.,* Civ. A. No. H–08–1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec.11, 2008).

single location under common management and were subject to the same policy of denying overtime wages.  Doc. 6 ¶ 27; Doc. 21 ¶ 2.  In addition, it is clear from the record that other individuals, particularly those who may have initially withdrawn under pressure, wish to join the suit.  *See* Docs. 21-4 and 21-6.

Defendants' contention that different Plaintiffs are employed by different Defendants is insufficient to overcome Plaintiffs' evidence in favor of conditional certification.  First, Defendants' contention is contradicted by their answers to Plaintiffs' complaint wherein FPS admits that the named Plaintiffs "*were* hourly employees of [the] FPS Defendants….[but] are not *currently* hourly employees of [the] FPS Defendants" (FPS Answer, Doc. 14 ¶ 5 (emphasis in original)) and the Premier Defendants admit that the named Plaintiffs "are hourly employees of [Premier]…" (Premier Answer, Doc. 15 ¶ 5).  Furthermore, the evidence in the record supports the conclusion that while Plaintiffs may have previously received payment from FPS and now receive payment from Premier, none of the other circumstances of Plaintiffs' employment have changed and all Plaintiffs were employed by the same entity at the same time, or, at the very least, were uniformly subject to the same payroll practices.  *See* Doc. 6 ¶ 18; *see also* Doc. 21-3 ¶¶ 3–6; Doc. 21-4 ¶¶ 1–2, 5; Doc. 21-5 ¶ 5; 21-6 ¶ 8.  Lastly, Plaintiffs have offered sufficient facts to allege at this stage that Defendants are joint employers under the FLSA[5] and Plaintiffs

---

[5] The FLSA defines an "employer" very broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  To determine if an individual or an entity is an "employer" under the statute, applying an "economic reality" test, a court should examine whether he or it "'(1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records.'" *Gray v. Powers,* 673 F.3d 352, 355 (5th Cir. 2012) (quoting *Williams v. Henagan,* 595 F.3d 610, 620 (5th Cir. 2010)).  For a *prima facie* case under the FLSA, the employee bears the burden of demonstrating the existence of an employer-employee relationship by a preponderance of the evidence.  *Artis v. Asberry,* Civ. A. No. G–10–323, 2012 WL 5031196, at *3 (S.D. Tex. Oct. 16, 2012).  Whether a person or an entity is an "employer" under the statute is a question of law. *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1327 (5th Cir. 1985).

There can be multiple employers under the FLSA and 29 C.F.R. § 791.2(a) ("A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case.  [I]f the facts establish that the employee is

are entitled to additional discovery on the existence of a "joint relationship" among Defendants. "'Courts have held that it is appropriate to issue notice to potential class members when there is some evidence that employers are related, delaying the determination whether the employers actually have a joint-employment relationship.   In instances where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination.'"   *McKnight v. D. Houston., Inc.*, 756 F. Supp. 794, 806 (S.D. Tex. 2010) (quoting *Manning v. Goldbert Falcon, LLC*, Civ. A. No. 08-3427 (JEI) 2010 WL 3906735 (D.N.J. Sept. 29, 2010)); *see also Aguliar v. Complete Landsculpture, Inc.*, Civ. A. No. 3:04-CV-0776 D, 2004 WL 2293842, at *3 (N.D. Tex. Oct. 7, 2004) (noting that "if discovery shows that certain plaintiffs are not similarly situated due to differences in

---

employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek.").

Under 29 C.F.R. § 791.2(b),

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee, and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

employers, the court can decertify the class or can create subclasses") (citations omitted). Accordingly, the Court grants Plaintiffs' motion for conditional certification.[6]

## III.    Curative Notice and Invalidation of "Opt-Out" Forms

Plaintiffs request that the Court issue "curative" notice to the following class: "All [of] Defendants' Service and Installation Technicians who were paid straight time for overtime for any hours worked over forty in at least one workweek during the last three years."  Doc. 21 at 17. Plaintiffs further request that the Court invalidate the fourteen allegedly-coerced withdrawal letters or "opt-out forms" sent to Plaintiffs' counsel.  *Id.* at 16–17.  Plaintiffs' proposed notice is drafted so as to notify the putative class members that any submitted opt-out letters are no longer valid and all class members may continue to pursue their claim.  *See* Pl.'s Proposed Notice, Doc. 21-5.  To mitigate concerns regarding potential retaliation, Plaintiffs request that the curative notice be distributed to all members of the putative class in the next payroll following receipt of a Spanish-language version of the notice and consent form from Plaintiffs' counsel.  Doc. 21 at 18.  Plaintiffs request a 60-day opt-in period.  *Id.*  Lastly, Plaintiffs request that Defendants produce a computer-readable data file containing the names, last-known mailing addresses, last-known email addresses, and last-known telephone numbers of all class members to aid in the distribution of notice.  *Id.* at 17–18.

Defendants filed a response to Plaintiffs' motion in which they argue that the Court should not issue class notice, as any and all potential plaintiffs are already aware of the suit and have elected not to opt in, and many of those who have opted in wish to withdraw their claims. Docs. 29 and 30 ¶¶ 15–16.  In addition, Defendants aver that the withdrawal letters were not obtained by coercion and the Court should not invalidate them.  *Id.* ¶¶ 18–19.  In support of their

---

[6] Plaintiffs' motion to leave to file additional declarations in support of Plaintiffs' Motion for Conditional Certification under seal (Doc. 21 at 18) is denied as moot in light of this ruling.

responses to Plaintiffs' motion, Defendants offer five nearly identical affidavits from several managers and company executives who deny any acts of retaliation or intimidation against "any employees of [the FPS Defendants]." *See* Decls. of Campbell, V. Oddo, J. Oddo, Saldana, and Urritia; Doc. 29, Exs. L–O; Doc. 30-2. Plaintiffs filed a reply to Defendants' responses in which they point out that the Declarations "are carefully worded to say Defendants did not restrain, coerce or threaten any employees of [the FPS Defendants]" because Defendants contend that Plaintiffs are employees of Premier only and deny that Plaintiffs are employees of the FPS Defendants. Pl.'s Reply, Doc. 31 at 1–2 (citing FPS Answer, Doc. 14 ¶ 5). The declarations do not, Plaintiffs contend, deny that Defendants intimidated or coerced Plaintiffs to withdraw from this suit. *Id.* at 2.

Defendants' responses also assert numerous objections to various statements in Plaintiffs' declarations, particularly those regarding the effect of the alleged intimidation and coercion on other employees, as speculation or hearsay. Docs. 29 and 30 ¶¶ 2–3.[7] In their reply, Plaintiffs argue that these statements are not hearsay because they are "statements by agents or servants of [Defendants] concerning a matter within the scope of the agency or employment made during the employees' employment." Doc. 21 at 5 n.2 (citing *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003)). The Court need not resolve the evidentiary issues regarding these statements since the remaining statements to which Defendants do not object are more than sufficient to support the Court's conclusion that the Defendants did threaten and retaliate against the Plaintiffs who made the declarations, and those instances of retaliation are sufficient to support an inference that such conduct extended beyond those Plaintiffs to the other Plaintiffs who also submitted withdrawal letters.

---

[7] Defendants object to paragraphs 4, 6, 8, 9, 10, 11, 12, 15, 16, 17, 18, 19, and 20 of Juan Lara's Declaration (Doc. 21-4); paragraphs 4 and 6 of Luis Artega's Declaration (Doc. 21-6) and paragraphs 4, 6, 9, 10, 11, 12, 14, 15, 16, and 21 of Sarain Davila's Declaration (Doc. 21-5).

Defendants also object to the form and contents of Plaintiffs' proposed notice on the following bases: (1) it is not accurate as it does not include the names of the individual Defendants; (2) it includes a conclusory statement that that Plaintiffs were coerced by "the company" without including a definition of company; (3) it states that Plaintiffs who withdrew will continue to be included in the suit before the Court has issued a ruling on the issue; and (4) it does not inform potential plaintiffs that they have a right to pursue their claims separate from this suit.  Docs. 29 and 30 ¶ 20.  Lastly, Defendants argue that in the event that the Court decides that notice is warranted, it should issue only to Plaintiffs denied overtime in the last two years and not the last three years since the Court should not determine at this stage whether Defendants' alleged violation of the FLSA was willful under 29 U.S.C. § 255(a).  *Id.* ¶ 17.  Plaintiffs did not address any of these objections in their reply.  *See* Doc. 31 at 1–2.

Courts have both the duty and authority under § 216(b) "to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."  *Hoffman-La Roche Inc.*, 493 U.S. at 171.  In addition, courts have discretion in deciding how notice is distributed.  *See id.* at 172 (Courts have discretion in deciding whether and how to award "timely, accurate, and informative" notice to plaintiffs.");  *Ali v. Sugarland Petroleum*, Civ. A. No. 4:04-CV-0170, 2009 WL 5173508, at *3 ("[T]he court may exercise its discretion in defining the class of plaintiffs who will receive notice and how they will be notified.").

Here, the Court disagrees with Defendants' contention that notice is not needed in this case because all potential plaintiffs' are already aware of the case.  The fact that potential plaintiffs may be aware of the existence of an FLSA collective action does not nullify the need to inform them directly that they have a right to join and pursue their claims without fear of

retaliation, particularly in cases such as this where there is evidence of intimidation and coercion by the employer. The Court further finds that "curative" notice is warranted in this case and grants Plaintiffs' request that the notice be distributed to all members of the putative class in the next payroll following receipt of a Spanish-language version of the notice and consent form from Plaintiffs' counsel. The Court approves Plaintiffs' proposed notice to the extent that it informs those Plaintiffs who have withdrawn that they may rejoin the action without fear of retaliation, even if they previously signed a withdrawal letter. The Court does not, however, grant Plaintiffs' request to invalidate the previously-submitted withdrawal letters, and language to that effect must be stricken from the final notice. Plaintiffs who have withdrawn and wish to rejoin must be notified of their right to do so and informed that they may rejoin by submitting a second notice of consent. Plaintiffs who do not wish to rejoin, however, will not be forced to do so by automatically invalidating their withdrawal without their consent.

Defendants' objection that the notice is inaccurate because it does not include the name of the individual Defendants is overruled. Whether or not the individual Defendants named in this case were employers within the meaning of the FLSA and can or will be liable for the alleged violations is an issue that will be resolved at a later stage of the litigation. Plaintiffs' proposed notice is not inaccurate simply because it does not include the name of the individual Defendants. The proposed notice provides the putative class members with sufficient information to understand the nature of the case and make an informed decision about whether or not they wish to join. Defendants' objection that the notice contains a conclusory statement that the Plaintiffs were coerced by "the company," without providing a sufficient definition of "the company," is likewise overruled. As previously discussed, Plaintiffs have alleged that Defendants are "joint employers" within the meaning of the FLSA and it is appropriate to

reserve the determination of whether Defendants actually have a joint-employment relationship for the decertification stage.  Again, the notice as written provides Plaintiffs with sufficient information to understand that some employees were improperly coerced by Defendants to withdraw from the case and that those employees and others may join or rejoin without fear of retaliation.  Defendants' objection to the statements in the notice that the Court has invalidated the withdrawal letters is sustained.  As discussed *supra*, those portions of the proposed notice must be stricken.  Defendants' objection that the notice does not inform potential plaintiffs of their right to pursue their claims individually is overruled.  The notice is sufficient in that it informs plaintiffs of their choice of whether or not to join the suit and the basic consequences of those choices.  Lastly, Defendants' objection that notice should be limited to class members who were denied overtime in the last two years is overruled.  Plaintiffs are not required to prove willfulness prior to discovery.  *See Walker v. Honghua Am., LLC*, 970 F. Supp. 2d 462, 472 (S.D. Tex. 2012) ("The well-established precedent of the Southern District of Texas indicates that, where a plaintiff alleges a willful FLSA violation, notice is proper for potential class members employed by the defendant within the full three-year period.").  Plaintiffs here have alleged that Defendants willfully violated the FLSA.  Therefore, notice is appropriately issued to employees who were denied overtime in the last three years.

## IV.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion for Conditional Certification (Doc. 21) is **GRANTED**, and the following class is conditionally certified: All of Defendants' current and former Service and Installation Technicians who were paid straight time for overtime for any hours worked over forty (40) in at least one workweek during the last three years.  It is further

**ORDERED** that Defendants produce to Plaintiffs a computer-readable data file containing the names, last-known mailing addresses, last-known email addresses, and last-known telephone numbers for all class members.  It is further

**ORDERED** that the proposed notice, attached as Exhibit 15 to Plaintiffs' motion for conditional certification, shall be modified prior to dissemination consistent with this Opinion. Putative class members will have sixty (60) days after the postmark date of Plaintiffs' mailing to execute the consent form and return it to Plaintiffs' counsel for filing with the Court.  A putative class member's submission of an executed consent to Plaintiffs' counsel after the sixty-day deadline will be deemed untimely.

SIGNED at Houston, Texas, this 4th day of August, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE